**In re JAMESTOWN FARMERS ELEVATOR, INC., Debtor.**

**Bankruptcy No. 83–05032.**

United States Bankruptcy Court, D. North Dakota.

Jan. 21, 1985.

Asst. U.S. Atty. Gary Annear, Fargo, N.D., for USA/CCC.

Paul J. Scheerer, Minneapolis, Minn., for First Bank of North Dakota—Jamestown.

Michael Hannaher, Moorhead, Minn., for Trustee.

William Westphal, Minneapolis, Minn., U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The present matter involves a disbursement of proceeds from the sale of the Debtor's assets by the Trustee. By Stipulation filed with the Court on August 9, 1984, it was agreed that Commodity Credit Corporation would sell 164,933.06 bushels of wheat stored at the Debtor's facilities on behalf of the Trustee. A hearing as to the disposition of the proceeds gained from the sale of the grain was held before the Court on October 31, 1984. The parties who appeared and asserted an interest in the proceeds at the hearing included the United States of America/Commodity Credit Corporation, by and through its attorney, Gary Annear, and First Bank of North Dakota (N.A.)—Jamestown, by and through its attorney, Paul Scheerer. The Court authorized the Trustee, by Order filed November 7, 1984, to turn over the sum of $433,751.14 to the Clerk of the Bankruptcy Court to be held in an interest-bearing trust account until resolution of the asserted interests in the grain proceeds. The United States of America and First Bank of North Dakota—Jamestown have each filed Memorandums in support of their claims to the grain proceeds.

## FINDINGS OF FACT

Commodity Credit Corporation and First Bank of North Dakota—Jamestown are creditors of Freddie and Marlys Mutschler, Debtors in bankruptcy proceeding No. 83–05004, and certain members of their family. Freddie and Marlys Mutschler were shareholders for the Debtor, Jamestown Farmers Elevator, and utilized it for storage and sale of grain owned by Mutschlers. Freddie and Marlys Mutschler filed January 6, 1983, for relief under Chapter 11 of the Bankruptcy Code. Commodity Credit Corporation was owed, as of January 6, 1983, the sum of $664,667.64 by Mutschler. Mutschler owed First Bank, as of January 6, 1983, in excess of $3,000,000.00. The Bank's claim has since been reduced by application of collateral proceeds to $2,796,070.00. Commodity Credit Corporation submitted a summary of various loans it

made to Freddie Mutschler and his son, Rick Mutschler. *See* Exhibit A. To secure the loans made to Freddie Mutschler and his son, Rick Mutschler, the aforementioned grain was hauled to the Jamestown Farmers Elevator where warehouse receipts were issued and turned over to Commodity Credit Corporation. Said receipts are as follows:

| Warehouse Receipt No. | Quantity | |
|---|---|---|
| 628 | 2,554.37 | bushels |
| 969 | 1,800.00 | |
| 1461 | 8,447.55 | |
| 1462 | 897.62 | |
| 1463 | 2,998.69 | |
| 1464 | 12,698.27 | |
| 1466 | 13,755.02 | |
| 1467 | 1,481.51 | |
| 1468 | 5,521.20 | |
| 1469 | 10,057.93 | |
| 1470 | 11,433.08 | |
| 1471 | 13,016.71 | |
| 1472 | 12,232.72 | |
| 1473 | 11,897.37 | |
| 1485 | 1,609.28 | |
| 1505 | 11,092.15 | |
| 1506 | 11,457.36 | |
| 1507 | 3,205.81 | |
| 1510 | 380.89 | |
| 1511 | 2,048.45 | |
| 1512 | 2,303.35 | |
| 1513 | 884.10 | |
| 1514 | 5,082.85 | |
| 1515 | 4,511.86 | |
| 1516 | 1,079.54 | |
| 1517 | 3,419.21 | |
| 1518 | 1,403.81 | |
| 1535 | 3,202.77 | |
| 1541 | 5,148.50 | |
| 1542 | 3,665.46 | |
| 1545 | 1,080.00 | |
| TOTAL | 170,367.43 | |
| LESS PARTIAL SHIPMENTS | −2,852.61 | |
| TOTAL UNDELIVERED | 167,514.82 | bushels |

The Trustee disposed of a total of 165,198.46 bushels of grain in connection with the Stipulation which is the subject of this Order. The funds held by the Clerk of the Bankruptcy Court pursuant to the Order of November 7, 1984, are the proceeds from the sale of the grain disposed of on behalf of the Trustee.

First Bank was given security interests through a number of security agreements entered into between Mutschler Farms (Freddie and Marlys Mutschler) dating from June 20, 1980. The security interests given by Mutschler included, among other things, growing crops and grain. The Bank perfected its interest by the filing of financing statements in Stutsman County and other counties. This Court, in its decision *In re Mutschler*, Adversary Proceeding No. 83–7021 (Bankr.D.N.D. November 10, 1983), made Findings of Fact, as follows:

7. Prior to the filing of the Debtors' Chapter 11 petition, the Debtors did cause grain in which the Bank held a validly perfected security interest to be sold through the Debtors' affiliate, Jamestown Farmers Elevator, without the consent of the Bank.

8. The proceeds of the aforementioned unauthorized sales of the Bank's collateral were deposited in an account of Jamestown Farmers Elevator maintained at First National Bank of Jamestown (now known as Norwest Bank—Jamestown).

9. The Debtors caused sums to be disbursed from the Jamestown Farmers Elevator bank account at Norwest Bank—Jamestown to third parties and to themselves. Those disbursements are reflected in an affidavit filed with this Court by Debtors' counsel on or about May 23, 1983, in adversary proceeding number 83–7155. A substantial portion of the proceeds of collateral converted by the Debtors was transferred to relatives of the Debtors or to bank accounts maintained by the Debtors in Arizona.

An examiner was appointed in bankruptcy proceeding No. 83–05004 on March 15, 1983. The examiner reported that Freddie and Marlys Mutschler sold between August 1, 1982, and December 31, 1982, wheat in an amount of 167,036.16 bushels. The Bank now argues that the grain Mutschler sold prior to the bankruptcy through his affiliate, Jamestown Farmers Elevator, could just as well have been collateral of

Commodity Credit Corporation as collateral of First Bank—Jamestown. Thus, the Bank requests the Court proportionately distribute the proceeds of the grain sold by the Trustee and now held by the Clerk of the Bankruptcy Court.

## CONCLUSIONS OF LAW

■ Commodity Credit Corporation relies upon N.D.C.C. § 41–07–11 as its basis for a superior claim to the proceeds held by the Clerk of the Bankruptcy Court. Section 41–07–11 of the North Dakota Century Code provides, as follows:

A buyer in the ordinary course of business of fungible goods sold and delivered by a warehouseman who is also in the business of buying and selling such goods takes free of any claim under a warehouse receipt even though it has been duly negotiated.

N.D.Cent.Code § 41–07–11 (1983). Commodity Credit Corporation argues that section 41–07–11 establishes the only other prior right to a holder of a warehouse receipt. Under section 41–07–11, only a buyer in the ordinary course of business takes stored grain free of the claims of holders of warehouse receipts. Since the claim of First Bank is not based even on its status as a buyer of the goods, Commodity Credit claims under N.D.C.C. § 41–07–11 as a holder of warehouse receipts a prior position over the interest of First Bank in the grain proceeds. This Court, however, construes section 41–07–11 of the North Dakota Century Code to only determine the priority of rights in goods between holders of warehouse receipts and subsequent purchasers of stored fungible goods. First Bank does not assert an interest in the grain proceeds as a subsequent purchaser of the goods. Since First Bank bases its claim on its prior financing of the depositor's farming operation, section 41–07–11 is not determinative of the priorities between the parties.

■ Authority for the pro rata distribution which the First Bank requests in this instance is found under N.D.C.C. § 41–07–

13. Section 41–07–13 of the North Dakota Century Code provides, in part:

Fungible goods so commingled are owned in common by the persons entitled thereto and the warehouseman is severally liable to each owner for that owner's share. Where because of overissue a mass of fungible goods is insufficient to meet all the receipts which the warehouseman has issued against it, the persons entitled include all holders to whom overissued receipts have been duly negotiated.

N.D.Cent.Code § 41–07–13(2) (1983). While section 41–07–13 is concerned with the responsibility of a warehouseman, it indicates that persons with claims to the fungible goods of equal priority are to proportionately share the proceeds from the goods in storage. The issue which remains is whether a holder of a warehouse receipt is given a higher priority than a creditor who claims a prior perfected interest in the stored grain.

The priority of warehouse receipts over a prior perfected interest in goods is governed under N.D.C.C. § 41–07–32. Section 41–07–32(1) of the North Dakota Century Code provides, as follows:

1. A document of title confers no right in goods against a person who before issuance of the document had a legal interest or a perfected security interest in them and who neither:
   a. Delivered or entrusted them or any document of title covering them to the bailor or his nominee with actual or apparent authority to ship, store, or sell or with power to obtain delivery under this chapter (section 41–07–28) or with power of disposition under this title (sections 41–02–48 and 41–09–28) or other statute or rule of law; nor
   b. Acquiesced in the procurement by the bailor or his nominee of any document of title.

N.D.Cent.Code § 41–07–32(1) (1983). The holder of a document of title is given priority under N.D.C.C. § 41–07–32 over a prior perfected secured creditor who has acquiesced in the depositor's receipt of the

document of title, or in receipt of the document by the depositor's nominee. A document of title is defined under state statutes to include a warehouse receipt. *See* N.D.Cent.Code § 41–01–11(15) (1983). The important inquiry under section 41–07–32(1)(b) is whether the secured creditor has acquiesced in another party's receipt of the document of title. The official comments to U.C.C. § 7–503 note that " 'acquiescence' by the landlord or tenant does not require active consent under subsection (1)(b) and knowledge of the likelihood of storage or shipment with no objection *or* effort *to* control it is sufficient to defeat his rights as against one who takes by 'due' negotiation of a negotiable document." In one dispute, an arbitrator determined that a prior secured party did not acquiesce in a creditor's receipt of a document of title where the prior secured party had perfected his interest by filing a financing statement specifically covering documents of title. *See* 21 A.L.R.3d 1343, § 6. There is no evidence in the present instance that the Bank did not wish Commodity Credit to become a holder of the warehouse receipts. To the contrary, in most every instance First Bank released its claim against grain so that Commodity Credit would be able to make a loan to the Debtors and in exchange receive an enforceable warehouse receipt. Further, there is no specific claim of a security interest in documents of title contained in the financing statements filed by the Bank. The Court must find from the evidence that First Bank acquiesced in this instance to Commodity Credit's receipt of documents covering the stored grain.

First Bank and Commodity Credit have been forced, because of circumstances which gave rise to a shortage of grain in the Debtors' facilities, to lay claim to the same grain proceeds. The Court does not mean to determine that First Bank does not have a valid claim to the grain proceeds. The Court only finds that Commodity Credit has a prior right to the proceeds over the Bank because of Commodity Credit's status as a holder of warehouse receipts and the Bank's acquiescence to that status.

Accordingly, and for the reasons stated,

IT IS ORDERED:

That Commodity Credit Corporation has, under section 41–07–32(1) of the North Dakota Century Code, a prior right to the proceeds held by the Clerk of the Bankruptcy Court.

That the Clerk of the Bankruptcy Court turn over to Commodity Credit Corporation the sum of $433,751.14 plus any interest which has accrued on that amount.

## EXHIBIT A

| Claim No. | Exhibit No. | Warehouse Loan No. | Owner | Lien Waiver | Quantity (bu.) | Type Grain | Amt Loaned | Balance Owed U.S. as of 01/06/83 |
|---|---|---|---|---|---|---|---|---|
| 1 | A | 245 | Fred Mutschler | No | 12,240.00 | Wheat | $ 27,778.00 | –0– |
| 2 | B | 266 | Fred Mutschler | No | 6,300.00 | Wheat | 14,238.00 | $ 15,840.77* |

(* This grain sold pursuant to bankruptcy court order and held in escrow account which has since been disbursed.)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3 | C | 04 | Fred Mutschler | No | 38,712.80 | Wheat | $130,737.08 | $130,757.08* |

(* This grain designated by CCC as Mr. Mutschler's PIK bushels in 1984—the loan was satisfied.)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4 | D | 01 | Rick Mutschler | No | 8,978.65 | Wheat | $ 32,143.57 | $ 37,747.23 |
| 5 | E | 04 | Mutschler Farms | Yes | 52,250.56 | Wheat | $188,882.45 | $220,586.32 |
| 6 | F | 34 | Mutschler Farms | Yes | 96,644.19 | Wheat | $344,649.00 | $390,778.67 |
| 7 | G | 36 | Rick Mutschler | No | 1,609.28 | Wheat | $ 5,729.04 | $ 6,585.68 |
| 8 | H | 48 | Rick Mutschler | No | 3,202.77 | Wheat | $ 11,401.86 | $ 12,662.48 |
| 9 | I | 54 | Fred/Rick Mutschler | Yes | 4,701.68 | Wheat | $ 16,902.54 | $ 19,439.66* |

(* This loan was transferred from Farm Storage Loan No..326, Claim 14, Exhibit "N", part of grain sold and money was held in escrow pursuant to previous court order.)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10 | J | 53 | Fred/Rick Mutschler | Yes | 5,148.50 | Wheat | $ 17,582.13 | $ 20,467.13* |

(* This loan was transferred from Farm Storage Loan No. 97, Claim 12, Exhibit "L".)

| Claim No. | Exhibit No. | Warehouse Loan No. | Owner | Lien Waiver | Quantity (bu.) | Type Grain | Amt Loaned | Balance Owed U.S. as of 01/06/83 |
|---|---|---|---|---|---|---|---|---|
| 11 | K | 55 | Fred/Rick Mutschler | Yes | 3,665.46 | Wheat | $ 13,122.35 | $ 15,469.23* |

(* This loan was transferred from Farm Storage Loan No. 97, Claim 12, Exhibit "L".)

| Claim No. | Exhibit No. | Warehouse Loan No. | Owner | Lien Waiver | Quantity (bu.) | Type Grain | Amt Loaned | Balance Owed U.S. as of 01/06/83 |
|---|---|---|---|---|---|---|---|---|
| 12 | L | 97 | Fred/Rick Mutschler | Yes | 130,785.00 | Wheat | $419,819.85 | $463,849.18 |
| 13 | M | 325 | Fred/Rick Mutschler | Yes | 9,970.00 | Barley | $ 17,846.30 | $ 11,465.37 |
| 14 | N | 326 | Fred/Rick Mutschler | Yes | 29,290.00 | Wheat | $ 99,993.90 | $ 62,833.41 |
| 15 | O | 01 | Rick Mutschler | No | 1,444.48 | Wheat | $ 5,164.02 | $ 5,465.51 |
| 16 | P | 14 | Fred/Rick Mutschler | Yes | 49,091.99 | Wheat | $199,129.51 | $210,220.74 |
| 17 | Q | 36 | Rick Mutschler | Yes | 16,330.00 | Barley | $ 36,089.30 | $ 38,030.21 |
| 18 | R | 382 | Freddie Mutschler | Yes | 80,680.00 | Barley | $178,302.80 | $178,611.78* |

(* Also covered by Financing Statement Form UCC-1.)

| Claim No. | Exhibit No. | Warehouse Loan No. | Owner | Lien Waiver | Quantity (bu.) | Type Grain | Amt Loaned | Balance Owed U.S. as of 01/06/83 |
|---|---|---|---|---|---|---|---|---|
| 19 | S | 17 | Freddie Mutschler | Yes | 54,662.86 | Wheat | $191,424.38 | $215,865.08 |